**TAVERNS FOR TOTS, INC., Plaintiff,**

v.

**CITY OF TOLEDO, et al., Defendants.**

**No. 3:04 CV 7030.**

United States District Court,
N.D. Ohio,
Western Division.

June 14, 2004.

Steven C. Hales, Lydy & Moan, Sylvania, OH, for Taverns for Tots, Inc., Plaintiff.

Adam W. Loukx, City of Toledo, Department of Law, Barbara E. Herring, City of Toledo, Department of Law, Keith A. Wilkowski, Vassar, Dills & Dawson, Toledo,

OH, for City of Toledo, Jack Ford, Mayor, Defendants.

## ORDER

CARR, District Judge.

This is § 1983 case arising under the First Amendment to and Due Process and Equal Protection Clauses of the Federal Constitution. The plaintiff, Taverns for Tots, Inc., is a not-for-profit corporation. Plaintiff claims that the defendants, City of Toledo, Ohio and Mayor Jack Ford, violated the plaintiff's constitutional rights by enactment and enforcement of Toledo's Clean Indoor Air Act of 2003, Ordinance 509–03, codified at Toledo Mun.Code § 1779.01 *et seq.* Defendants have filed a counterclaim seeking to enforce the ordinance against establishments—including several Toledo bars and restaurants—affiliated with plaintiff. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

On March 1, 2004, this court granted defendants' request for a preliminary injunction against plaintiff, preventing the establishments associated with plaintiff from holding Taverns for Tots "events" at which smoking was permitted in violation of the ordinance. *Taverns for Tots, Inc. v. City of Toledo,* 307 F.Supp.2d 933 (N.D.Ohio 2004).

Pending is plaintiff's motion for reconsideration of the court's March 1, 2004, preliminary injunction order. For the following reasons, the motion shall be denied.

## BACKGROUND

The March 1, 2004 order sets forth the facts underlying the this case. *Id.* at 937–39. In summary, Taverns for Tots, ostensibly a nonprofit organization dedicated to raising money for children's charities, was formed on December 20, 2003.[1] Two individuals—one of plaintiff's directors and a bar owner affiliated with plaintiff—testified at the preliminary injunction hearing on February 5, 2004 that Taverns for Tots was formed primarily as a means to enable smoking in bars and restaurants by taking advantage of the exemptions in the Clean Indoor Air Act for membership associations and private social functions. Toledo Mun.Code § 1779.04(a)(1). The City argued that plaintiff's charitable purpose—to raise money for needy children—was secondary to that primary goal of avoiding compliance with the anti-smoking ordinance; thus, the City contended, Taverns for Tots could not qualify as a membership association pursuant to the ordinance.

Bars had been holding Taverns for Tots "events" since December 20, 2003, at which smoking was permitted and to which any member of the public could gain admittance on payment of a one dollar lifetime "membership fee." According to plaintiff, because each nightly "event" was held under the aegis of Taverns for Tots and each person present possessed or had purchased a membership card, each of these "events" was sponsored by a "membership association" (namely, Taverns for Tots) under the Clean Indoor Air Act and was thus exempt from the ordinance.[2]

---

1. Taverns for Tots was formed just as many Toledo bars' exemptions from enforcement of the ordinance were expiring and shortly after this court denied a preliminary injunction requested by nearly forty Toledo bar owners in a prior lawsuit. *See D.A.B.E., Inc., et al. v. City of Toledo,* 292 F.Supp.2d 968 (N.D.Ohio 2003).

2. The Clean Indoor Air Act contains a list of exemptions from the prohibition against lighted smoking materials in public places, including an exemption for "[a]n entire room or hall which is being used by a membership association or for a private social function, provided that the event is under the control of the sponsor of the function, the general public is not invited ...." Toledo Mun.Code § 1779.04(a)(1).

This court found that defendants had a substantial likelihood of success on the merits of the case because plaintiff appeared to be merely a "sham" organization organized to evade the Clean Indoor Air Act. The court also found that the balance of harms and the public interest weighed in favor of defendants. Specifically, the court found that, without an injunction, defendants were likely to suffer irreparable harm because plaintiff's efforts to frustrate enforcement of the ordinance jeopardized the health and welfare of patrons and employees of the bars holding the "events." The court also found that an injunction would not cause plaintiff harm because the injunction would do nothing to impair Taverns for Tots' ability to hold charitable events and raise money for children's charities. Moreover, the court found that to deny the injunction would harm establishments that had chosen not to violate the Clear Indoor Air Act, some of which spent money constructing smoking lounges in compliance with the ordinance. Finally, the court found that the public interest favors enforcement of valid ordinances that protect public health.

## DISCUSSION

### A. Plaintiff's Motion for Reconsideration

Plaintiff's motion for reconsideration suggests that evidence which was either not available at the February 5, 2004 preliminary injunction hearing or not properly regarded by the court in its March 1, 2004 preliminary injunction order calls into question the court's conclusion that Taverns for Tots is a sham organization established to violate the law of the City of Toledo. Plaintiff argues that because the March 1st order contains "significant oversights" (Doc. 19, at 2) and because plaintiff can now show additional evidence proving the legitimacy of its corporate form, the

court's decision on the preliminary injunction order is incorrect.

Plaintiff's assertion that because it now has evidence that it is a bona fide nonprofit corporation, it has free license to violate the Clean Indoor Air Act is unpersuasive and would set a dangerous precedent. As defendants point out, I anticipated this argument and explained why plaintiff's current logic is flawed in the March 1st order:

> Were I not to conclude that Taverns for Tots is a sham corporation, I would still conclude that the City has a substantial likelihood of prevailing on the merits. It is never proper to use a legitimate corporate form for unlawful purposes. In other words, even if Taverns for Tots were not a sham entity, formed to facilitate evasions of the law, I could still restrain unlawful acts—i.e., smoking at 'events' held under its sponsorship and for its benefit.

307 F.Supp.2d at 944 n. 9.

Moreover, plaintiff conveniently forgets that *it* initiated this lawsuit on January 26, 2004, approximately one month after it began sponsoring "events" and well before it had complied with many of the requisite corporate formalities that it now claims to have satisfied. When it filed its complaint, plaintiff asserted to this court that it was a bona fide nonprofit organization. It sponsored hundreds of "events" at which smoking was permitted, collected money for unnamed and unknown charitable purposes, and distributed membership cards to any member of the general public who entered one of its affiliated establishments and paid his or her one dollar lifetime "membership fee." To justify these activities, plaintiff held itself out to the public and this court as a membership association as defined by the ordinance, and asked the court to analyze its constitutional and other claims on that basis. Plaintiff is not

entitled to reconsideration of what it presented to the court simply because it claims to have corrected some of the many deficiencies in its corporate form highlighted in the March 1st order.

Additionally, nothing in the new materials plaintiff has submitted convinces me that plaintiff's unlawful purpose—to evade the strictures of the Clean Indoor Air Act—has changed or is likely ever to change. Plaintiff remains free to operate in furtherance of its asserted "mission," as stated in the Mission Statement submitted to the court with its motion: "Taverns for Tots, Inc. is dedicated to making children happy and healthy in their own environment by providing for effective assistance, especially in their economic development." (Doc. 19 exh. A, at 1). Nothing in the court's March 1, 2004 order prohibits plaintiff from raising money for children's charities or from holding fundraising or other events in furtherance of that mission. The March 1st order simply enjoins plaintiff from sponsoring or organizing events at which smoking is permitted in violation of the Clean Indoor Air Act. That order will remain in effect.

As I explained in the March 1st order, regardless of plaintiff's corporate status, defendants have still established a likelihood of success on the merits because even legitimate nonprofit entities may not violate the law as they see fit or as may serve their overt or covert purposes. This is particularly true in this case, in which a central fact remains undisputed and indisputable: Taverns for Tots was primarily created as a vehicle for facilitating evasion of the City's anti-smoking ordinance.

Moreover, the other factors I cited in the March 1st order, including the balance of harms and the public interest, still weigh heavily in defendants' favor. Plaintiff has presented no new evidence that refutes or calls into question those factors or any other factual or legal conclusions in the order. Thus, plaintiff's motion presents nothing new that merits reconsideration of the March 1, 2004 order granting defendants' motion for a preliminary injunction. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998) ("Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.") (citations omitted).

Plaintiff's motion for reconsideration, therefore, shall be denied. In addition, pursuant to this court's standard approach to unfounded and inappropriate motions to reconsider, plaintiff shall be ordered to pay $2,500 to defendants to compensate them for time spent responding to the motion. *See, e.g., Miller v. Norfolk Southern Rwy. Co.,* 208 F.Supp.2d 851 (N.D.Ohio 2002).

It is, therefore,

ORDERED THAT:

1. Plaintiff's motion for reconsideration be, and the same hereby is denied; and

2. Plaintiff shall pay $2,500 to defendants for a sanction pursuant to Fed. R.Civ.P. 11, 28 U.S.C. § 1927, and this court's inherent authority to sanction misconduct.

So ordered.